KENNETH C. ABSALOM, (SBN 114607)
MICHAEL D. NELSON, (SBN 171359)
LAW OFFICES OF NEVIN & ABSALOM
22 Battery Street, Ste. 333
San Francisco, CA 94111
Phone: (415)392-5040
Facsimile: (415)392-3729
Ken.Absalom@333law.com
Michael.Nelson@333law.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 08 0132 MHP

| | |
|---|---|
| WAREHOUSE UNION LOCAL 6, ILWU, | NO. |
| Plaintiff, | **COMPLAINT TO COMPEL ARBITRATION** |
| v. | |
| C&H SUGAR COMPANY, INC., | |
| Defendant. | |

As and for its Complaint herein, Plaintiff WAREHOUSE UNION LOCAL 6, ILWU (hereafter "Plaintiff" or "Local 6") alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff brings this action under Section 301(a) of the National Labor Relations Act (NLRA), as amended, 29 U.S.C. Section 185(a), to enforce Defendant's obligation arising under a collective bargaining agreement to arbitrate disputes between the parties thereto.

2. Jurisdiction of this Court is based on 29 U.S.C. Section185(a) and 28 U.S.C. Section 1331.

3. Plaintiff is an unincorporated labor organization affiliated with the International Longshoremen's and Warehousemen's Union (ILWU). Local 6 represents employees for collective bargaining purposes who are employed in various industries, including those employed

COMPLAINT TO COMPEL ARBITRATION

1  in longshore and warehousing facilities. Plaintiff's principal place of business is in Oakland,
2  California, which is within this judicial district.
3       4.   Defendant C&H SUGAR COMPANY, INC. (hereafter "Defendant" or "C&H") is
4  a corporation authorized to do business in the State of California, and is engaged in the
5  processing and manufacturing of food products. Its principal place of business is in Crockett,
6  California, within this judicial district.
7       5.   Venue is proper in this judicial district because the parties' business operations are
8  conducted within this district and the collective bargaining agreement which is the subject of this
9  action was entered into and executed in this District.

## CLAIM FOR RELIEF

11      6.   At all relevant times, Plaintiff and Defendant have been signatories to a collective
12  bargaining agreement covering employees working at C&H's operations in Crockett, California.
13      7.   At all relevant times, the aforesaid collective bargaining agreement has contained
14  a multi-step grievance procedure to address and adjust differences regarding the interpretation
15  and implementation of its terms. Said grievance procedure culminates in final and binding
16  arbitration. (A true and correct copy of the pertinent part of the agreement, Section XXIII,
17  "Grievance Procedure," pages 20-22, is attached hereto as Exhibit A.)
18      8.   The collective bargaining agreement specifically authorizes a party to file
19  grievances to resolve disputes over employee discipline. More specifically, Section XIII, titled
20  "Employment, Advancement and Retention," provides, in pertinent part, "When an employee is
21  discharged, the employee shall be furnished a written statement of the reason therefor. If the
22  employee believes that the discharge was unfair, it may be appealed under the grievance
23  procedure herein provided for." (A true and correct copy of the pertinent part of the agreement,
24  Section XIII (I), page 13, is attached hereto as Exhibit B.)
25      9.   The collective bargaining agreement also expressly authorizes a party to file
26  grievances to resolve disputes over other terms and conditions of employment. More

specifically, Section XXIII states, "Should differences arise between the Employer and an employee, or the Union, over the terms of this agreement, or over codified work rules, or should any differences of local trouble of any kind arise in the warehouse, there shall be no suspension or slowdown of operation on the part of any employee or the Union pending settlement of the dispute in accordance with the procedure provided herein." (Section XXIII(A), Exhibit A, page 20.) That section also states that, "If a problem arises which is not satisfactorily settled on the job and a dispute occurs between the Employer and employee or Union, it may be processed as a grievance through the procedure specified below." (Section XXIII(C), Exhibit A, page 20.)

10. Plaintiff alleges that Defendant has failed and refused to comply with the grievance procedure and Plaintiff's timely requests to proceed to arbitration on the following grievances concerning the terminations of bargaining unit employees Manuel Morales and Luis Moreno.

11. On or about July 23, 2007, Defendant unfairly terminated these employees. On or about that same date, Local 6 protested the terminations by filing a grievance pursuant to the procedure set out in Section XXIII.

12. On or about August 7, 2007, Local 6 notified the employer that it intended to arbitrate the grievances pursuant to the procedure set out in Section XXIII.

13. Since that date, Defendant has failed and refused, and continues to fail and refuse, to submit the above-referenced grievances to arbitration as required by the parties' collective bargaining agreement. By such failure, Defendant has breached, and continues to breach, the terms of the collective bargaining agreement.

14. Defendant's conduct is particularly egregious given that it forced Plaintiff to file several similar actions that are pending in this Court. *See Warehouse Union Local 6, ILWU v. C&H Sugar Company, Inc.*, Northern District Case No. C-07-02202 EMC; *Warehouse Union Local 6, ILWU v. C&H Sugar Company, Inc.*, Northern District Case No. C-07-04812 JL. It has become clear that Defendant has abrogated the collective bargaining agreement and adopted a

1 plan of requiring Plaintiff to expend the time and resources related to these suits before it will
2 adhere to its obligations under the collective bargaining agreement. As Defendant's conduct
3 lacks merit, is wanton, wilful, and frivolous, Plaintiff hereby states its intention to seek sanctions
4 pursuant to Rule 11 of the Federal Rules of Civil Procedure.

5   **WHEREFORE**, Plaintiff prays for relief as hereinafter set forth:

6   1.   For an order directing Defendant to submit the above grievances to final and
7 binding arbitration in accordance with the terms of Section XXIII, Grievance Procedure, of the
8 collective bargaining agreement;

9   2.   For an order directing Defendant to reimburse Local 6 for its reasonable attorney's
10 fees and costs of suit; and

11   3.   For such other and further relief as the Court may deem just and proper.

13 Dated:   January 8, 2007

LAW OFFICES OF NEVIN & ABSALOM

By: KENNETH C. ABSALOM
MICHAEL D. NELSON
Attorney for Plaintiff
WAREHOUSE UNION LOCAL 6, ILWU

COMPLAINT TO COMPEL ARBITRATION
- 4 -

# EXHIBIT A

C. Union Absences

1. Employees, not exceeding three (3) in number, chosen by the Union to attend to local Union business outside the plant shall, with the permission of the management, be granted leave of absence without pay not exceeding ninety (90) days.

2. Employees, not exceeding three (3) in number, who are elected or appointed to a full time position with the local Union, shall be given written authority to be absent without pay for the period of such term of office or appointment. Upon one (1) week's notice of any such employee's desire to again return to work for the Employer, the employee shall be returned to the company's employment without reduction in seniority, status or pay except as such reduction may be made for all employees of comparable status who have not been absent under the terms of this provision.

## SECTION XXII

## GRIEVANCE PROCEDURE

A. Should differences arise between the Employer and an employee, or the Union, over the terms of this agreement, or over codified work rules, or should any differences or local trouble of any kind arise in the warehouse, there shall be no suspension or slowdown of operations on the part of any employee or the Union pending settlement of the dispute in accordance with the procedure provided herein.

B. It is agreed that the Union Business Agent and/or the Head Steward or other delegated Union official will participate, when called on by the Warehouse Manager or a delegated representative, in whatever discussion may be requested to determine all of the facts surrounding any problem which may arise before and/or after its submission as a grievance.

C. If a problem arises which is not satisfactorily settled on the job and a dispute occurs between the Employer and employee or Union, it may be processed as a grievance through the procedure specified below.

Step 1. A grievance brought by an employee and/or the Union shall be presented in writing to the Shift Superintendent on duty, or to the Warehouse Operations Superintendent. The written grievance shall state the nature of the complaint, cite the section of the contract which is alleged to have been violated, or the reason for the complaint if no alleged contract violation is claimed, the expected remedy, and shall carry the signature of one (1) employee concerned and/or a Union representative. As soon as possible, but not later than 72 hours after submission of the grievance (Saturdays, Sundays and holidays excluded) the Employer's answer shall be given to the Union in writing, signed by the Warehouse Manager or his delegated representative. The Employer shall not be required to consider any grievance which has not been referred to Step 1. within fourteen (14) consecutive calendar days following the date of the alleged occurrence of the incident.

Step 2. If the Employee or the Union is dissatisfied with the answer given in Step 1., the dispute may be submitted to a Grievance Committee in accordance with the procedure as set forth under that part of this agreement entitled "Grievance Committee."

Step 3. Any dispute involving the meaning, interpretation or application of the terms of this agreement which is not disposed of in Step 2., may be submitted to arbitration in accordance with the procedure as set forth under that part of this agreement entitled "Arbitration."

D. Failure of the Employer or the Union to answer a grievance within the prescribed time limits shall permit reference of the case to the succeeding step of the grievance procedure.

E. Grievance Committee

1. The Union and the Employer shall appoint a Grievance Committee to settle and adjust grievances arising under this agreement which have not been adjusted in Step 1. of the grievance procedure, except violations of the provisions of Section XXIV. Such committee shall be composed of three (3) employees subject to this agreement (to be selected by the Union) and three (3) representatives of the Employer (to be selected by the Employer from its personnel).

2. Any grievance arising between Employer and Union which is not settled under Section XXIII C. - Step 1. may be submitted to the Grievance Committee provided written notice of appeal is given not later than five (5) days (Saturdays, Sundays and holidays excluded) after answer has been given in Step 1., except that if a grievance concerns the discharge or disciplining of an employee, the notice of appeal must be given within five (5) days from the date of such discharge or disciplinary action. If given by the Employer, the notice shall be delivered to the Business Agent of the Union at the Union's business office. If given by the Union, the notice shall be delivered to the Warehouse Manager of the Employer at its Crockett Refinery. If written notice of appeal is not given within the agreed time, the right of appeal shall be forfeited.

3. Promptly following filing of notice of appeal, the Union and the Employer shall each furnish the other with the names of duly appointed members of their respective Grievance Committees for that grievance hearing. Alternate members may be appointed if necessary.

4. If a grievance is initiated by the Employer, the Grievance Committee shall meet at the request of the Employer's Warehouse Manager or a delegated representative; if a grievance is initiated by the Union, the Grievance Committee shall meet at the request of the Union's Business Agent or delegated Union official. A meeting of the Grievance Committee shall be requested within two (2) days (Saturdays, Sundays and holidays excepted) from the date on which notice of appeal is given, otherwise the grievance shall be considered abandoned.

5. The Grievance Committee shall meet within five (5) days after a meeting is requested by either party as herein provided, except that no meetings shall be held on Saturdays, Sundays or holidays unless by mutual consent. If the Grievance Committee members representing the party against whom the grievance is filed fail to meet within the agreed time, then the grievance as stated in notice of appeal shall be considered to be upheld and the complaining party entitled to the remedy claimed.

F. Arbitration

1. If the Grievance Committee does not agree upon a settlement of the grievance within five (5) days from the date of its initial meeting then, upon written notice of either party made within five (5) days after failure of the Grievance Committee to agree, an arbitrator shall be selected who shall act as the arbitrator and seventh member of such committee. Arbitration proceedings before such arbitrator shall be commenced and concluded with all reasonable dispatch.

2. If the party demanding arbitration fails or refuses to proceed to arbitration within thirty (30) days from the date of the demand for arbitration, then the grievance shall be considered as abandoned, provided that if the arbitration is delayed for reasons beyond the control of either party, then the arbitration shall be held within fifteen (15) days following termination of the reason for delay or shall be considered abandoned.

21

3. Pay for time lost by a discharged or disciplined employee is an arbitrable point. When the Grievance Committee or Arbitrator reinstates a discharged or disciplined employee, said Committee or Arbitrator shall have the power to decide what amount, if any, is due such employee for time so lost.

4. Selection of an arbitrator will be handled through mutual agreement between the attorney(s) for each party.

5. No arbitrator shall be chosen to serve in two (2) consecutive arbitrations unless by mutual consent of the parties.

6. At arbitration meetings where evidence is taken, a qualified court reporter may be procured by the Employer or the Union to take a complete transcript of all evidence. The cost of such reporter and transcript will be borne by the party ordering it unless the other party desires a copy of such transcript, in which event half of the entire cost of such reporter and transcript shall be borne by each party.

7. In arbitration proceedings all witnesses shall be sworn to tell the truth if requested by either party or by the arbitrator.

8. Except as above provided for reporter and transcript, all costs of arbitration other than costs of the respective parties shall be borne equally by the respective parties.

9. Any decision reached by a majority of the Grievance Committee or by a majority of the Committee including the arbitrator, shall be final and binding upon both parties.

10. Neither the Grievance Committee nor the arbitrator shall have authority to negotiate a new agreement and shall be bound by the written agreements between the respective parties.

## SECTION XXIII

## NO STRIKE, NO LOCKOUT

A. There shall be no strike, lockout or work stoppage for the life of the contract.

B. Refusal to cross a legitimate picket line shall not be deemed a violation of this agreement. A legitimate picket line is one established and maintained outside the entrances to the Employer's premises by a union acting independently of the ILWU, Local 6 that is engaged in a bona fide dispute with the Employer over wages, hours, or working conditions of employees for which such union has been certified or recognized as the collective bargaining representative. Collusive picket lines, jurisdictional picket lines, hot cargo picket lines, secondary boycott picket lines, and demonstration picket lines, regardless of the union by which any such line is established, are not legitimate picket lines within the meaning of this agreement.

C. The Union will give the Employer 72 hours' notice in writing of its intention to recognize a legitimate picket line in order to permit the Employer to safely terminate operations and sweeten off its plant.

## SECTION XXIV

## GROUP LIFE INSURANCE

1. a. C&H will provide, at its cost, Group Life Insurance in an amount equal to each employee's annual rate of basic earnings, plus $1,000.

   b. The amount of Group Life Insurance will be reduced eight (8) percent per year for those employees working beyond normal retirement age (age 65).

# EXHIBIT B

    b. An employee wi' ~~een (15)~~ or more years of service ~~,~~ not more often than once every three (3) ye~~a~~rs, postpone all or part of the veteran~~s~~ ~~v~~ication in any one year and take that postponed vacation in conjunction with regular and veterans vacation the following year subject to these conditions.

        (1) An accumulated vacation must be taken at a time mutually agreeable to the employee and Employer.

        (2) That portion of an accumulated vacation that has been carried over from a previous year shall be at the employee's regular rate of pay at the time the vacation is taken.

  2. Whenever the vacation period of any employee includes one of the recognized holidays, the employee shall be offered the option of receiving an additional day of pay for the holiday, or an additional day of vacation which shall be scheduled by the Employer either immediately before or after the vacation period.

## SECTION XII

## FUNERAL LEAVE

In the event of a death in the immediate family of an employee who has one (1) or more years of service with the Company, the employee shall, upon request, be granted such time off with pay as is necessary to make arrangements for the funeral and attend same, not to exceed three (3) regularly scheduled working days for in-state funerals and five (5) regularly scheduled working days for out-of-state funerals. This provision does not apply if the death occurs during the employee's paid vacation, or while the employee is on leave of absence, layoff, or sick leave, and does not apply to death resulting from war. For the purposes of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse, child, mother-in-law, father-in-law, sister-in-law, brother-in-law, grandparents, grandchildren, grandparents-in-law, stepparents, stepbrother, stepsister, stepchildren, step-grandchildren. At the request of the Employer, the employee shall furnish a death certificate and proof of relationship.

Funeral leave applies only in instances in which the employee attends the funeral, or is required to make funeral arrangements, but is not applicable for other purposes such as settling the estate of the deceased.

## SECTION XIII

## EMPLOYMENT, ADVANCEMENT AND RETENTION

A. Governing Policy

The long standing policy of the Employer with respect to the employment and advancement of employees shall continue in the following respects, viz, that due weight and consideration shall be given to individual merit, physical ability, and moral and mental capacity, and seniority. Moral capacity with respect to conduct outside the plant shall not be considered as a factor in the retention of any employee unless the employee has been convicted of a morals offense. Whenever employees have equal qualification for promotion the employee having seniority shall have preference.

B. Probationary Period

  1. Every new employee shall be placed upon probation for sixty (90) working days, during which period the Employer may release employee without giving any reason therefor. The Union may object to the retention of any such employee, for cause, prior to the expiration of said probationary period, in which event the matter will be handled under Section XXIII.

11

2.  New employees during the probationary period will demonstrate their capability to perform any Warehouse job to which they might normally be assigned, including the operation of a fork truck.

C. Warehouse Advancement

1.  All employees classified as Warehouse Levels 1 - 4, may advance to higher levels by completing required training within six (6) months. They are free to advance to higher pay rates on their own initiative. Future Level 1 employees must complete all Level 1 on-the-job training requirements within six (6) months.

    To maintain that level the employee must complete the training (as defined in Exhibit A) within six (6) months.

2.  All employees will be expected to perform any job on which they have been trained and which requires their level or any lower level classification. For example, a Level 3 employee could be assigned to fill a slot as an Operator, Level 1, Level 2 or Level 3 position where the employee has been trained and is qualified to perform the duties of the job. All levels required to make minor mechanical adjustment on their stations will work with maintenance specialists who are working on their equipment - up to the point that their training allows.

    Employees wishing to attain a higher level classification will be given the opportunity in accordance with their seniority. (Training must be completed within six (6) months.)

    Unilateral Training: Any incumbent wishing to be trained on another job at the same level or below, shall be afforded the right to train for that job within a six-month period.

    Warehouse management maintains the right to assign employees to any level to maintain efficient warehouse operations. Training necessary for that level will be provided. Employees assigned to these levels will be designated according to reverse seniority (low first).

3.  When there is a permanent vacancy on any job covered by this agreement, such job will be filled by polling the Warehouse work force or by posting a job vacancy notice on the Warehouse bulletin board. The vacancy notices will state the specific number of applicants to be selected if qualified to fill the job. Written applications may be made by employees seeking advancement and the Employer in filling such vacancies shall give due consideration to the applicants who apply for them. The vacancy will be filled within twenty (20) days of the vacancy.

    When there is a permanent vacancy on a Warehouse – Level 2 job, or below, it will be filled by polling the warehouse work force.

    The Employer reserves the right to hire new employees for such positions in the event that the vacancies cannot be filled by applications from employees who possess the necessary qualifications.

4.  Employees wishing to attain a Level 5 classification will be given the opportunity to train and qualify for the position. Upon completion of the training they will receive the Level 5 rate of pay. All regular Level 5 positions will be awarded on the basis of qualifications. The company reserves the right to select the best qualified person.

5.  Anyone wishing to advance to the AS/RS Coordinator job will be given the opportunity to train and qualify for the position. The number of personnel will not exceed four (4) at any one time.

D. Determination of Job Seniority

1. Seniority on posted jobs shall be established by the date of selection.

2. Seniority on non-posted jobs shall be established by the original date of transfer to the job.

3. Job seniority shall not be affected by shifts.

4. Job seniority shall not be affected by transfer to other jobs for the purpose of performing relief work.

5. Employees who are transferred to another job, other than Warehouse Operator to Warehouse - Level 1, at their own request shall retain their prior job seniority for a trial period of ten (10) working days, during which time they can voluntarily return to the job from which they were transferred. The employee may request additional training time which will be granted under the same conditions as in the past.

   An employee who requests a transfer to Warehouse Operator job will have an obligation to work the job for a minimum of 30 working days during which time the employee will retain the right to voluntarily return to the job from which transferred.

6. An employee who is removed from a job because of incompetency or inefficiency shall lose any previously established job seniority for any jobs above base rate and will be transferred to a base rate job to which entitled by plant seniority and is capable of performing.

E. Reduction in Forces

When a job is discontinued or the number of employees on a job is reduced, employees will be transferred off the job in reverse order of their job seniority. Under such circumstances employees will be transferred to the job from which they came, displacing employees with lesser job seniority. When and if a job is reinstituted or the number of employees on a job is again increased, employees, if still on-roll, will be returned to such jobs in accordance with their originally established job seniority.

F. Layoffs and Rehiring

When the Warehouse work force is reduced, the last person hired shall be the first person laid off, and in rehiring the last person laid off shall be the first person rehired until the list of former employees is exhausted. The Employer, however, reserves the right to retain sufficient incumbents on posted jobs as required to effectively carry on operations. Employees with posted job seniority who are laid off and later reemployed will have their posted job seniority redated to the date of reemployment, if during their layoff the job has been posted and filled by another employee. If the job is not reposted during their layoff, they will retain their original job seniority date upon being reemployed.

G. Temporary Assignments

An employee who is temporarily assigned to a job which provides for a one-half (1/2) hour paid lunch period from a job which provides a one (1) hour or a one-half (1/2) hour unpaid lunch period shall be treated as follows:

1. If assigned before having had a meal period, the employee shall take one-half (1/2) hour for lunch, which shall be considered time worked, and complete the work eight (8) hours after reporting for work.

2. If assigned after having had an unpaid lunch period the employee shall have the option of working for eight (8) hours, in which case the employee shall receive eight (8) hours of

straight-time pay plus  half (1/2) hour of overtime pay, working for seven and one-half (7-1/2) hours, in which case the employee shall be paid for eight (8) hours at the straight-time rate.

H. Transfers

An employee's job classification may be changed only by a transfer, which involves a change in the title and rate of pay. Employees may be transferred for the purpose of performing relief work; to fill job vacancies; because of incompetency or inefficiency; because of the discontinuance of a job or a reduction in the number of employees on a job; and for any other reason with the consent of the employee. Employees so transferred shall receive the rate of pay of the position to which transferred.

I. Unfair Discharge

When an employee is discharged, the employee shall be furnished a written statement of the reason therefor. If the employee believes that the discharge was unfair, it may be appealed under the grievance procedure herein provided for.

J. Termination of Seniority

1. Seniority shall be terminated for any warehouse employee who is discharged for cause or who voluntarily quits.

2. Any regular warehouse employee who is laid off for reasons other than above will have reemployment rights based on years of service as follows:

    More than 2 years, but less than 5 years -- 12 months

    More than 5 years of service -- 24 months

SECTION XIV

MECHANIZATION OPTION

A. It is recognized that equipment or methods changes may result in the elimination of jobs or a decrease in the number of employees required to perform a given job. When a layoff is impending because of equipment or methods changes in the warehouse department, a special early retirement option will be made available under the terms and conditions outlined in Paragraph B. below. This option is not available if an impending layoff is due to decreased melt, a decrease or change in sales requirements, or for any reason other than equipment or methods changes.

B. This option is available only to employees who have attained age 62 and who have completed 30 full years of service.

1. On the first day of any month during which equipment or methods changes will require a layoff, a notice will be posted on Employer's bulletin boards specifying the number of Warehouse Department employees to be affected.

2. Applications will be accepted from eligible employees for a period of fifteen (15) days after the posting of such notice.

3. From applications so received a number of Warehouse Department employees equivalent to the number of employees who would otherwise be laid off will be selected according to plant seniority for special retirement with a monthly payment (excluding pension plan benefits) of

14